**GILBERTO M. GARCIA, LLC**
**25 East Spring Valley Avenue**
**Maywood, New Jersey 07607**
**201-3287042**
**krickogarcia@aol.com**
**gilberto13@me.com**
**Attorney Id 040311987**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **LATINO FOOD CORPORATION, INC. PERU FOOD, INC.,** | : | **Civil Action No** |
| **Plaintiff,** | : | |
| v. | : | |
| **NESTLE, S.A., NESTLE, USA, NESTLE, PERU** | : | **Document Filed Electronically** |
| **Defendants.** | : | |

**PRELIMINARY STATEMENT**

This Complaint is brought on behalf of Plaintiffs, two corporations that distribute food products to retail outlets and other distributors. Plaintiffs bring this antitrust action for damages and injunctive relief under Section 1 of the Sherman Act, 15 U.S.C. § 1 and for violations of intentional and malicious interference with contractual relations. This action arises out of a conspiracy among the world's leading manufacturer of D'Onofrio panetones products in Peru, Nestle Peru, and the main distributor in the United States, Nestle USA, to preclude the plaintiffs from distributing panetones after Nestle Peru approved the distribution, in order for Nestle, Peru and Nestle, USA to be able to sell outdated and adulterated products and fix their prices in the Latino Market. As alleged more fully below, in 2014 and continuing to the present, the panetones business began to grow in the United States as a result of the increasing population of Peruvian nationals and their demands of products belonging to their cultural heritage. Although panetones are an original product of Italy, with minor variations, it is the most significant item of the Peruvian Xmas. As such, sales of it have increased substantially in the United States, specifically in the New York/New Jersey metropolitan area over the last 3 years. In the last three years, the sales of Nestle panetones manufactured in Peru, has increased substantially in the United States, except that Nestle allowed its only distributor to sell the products after they had lapsed the sales date, conspired to lower prices with their sole distributor to preclude other wholesalers to sell the panetones and has precluded Plaintiff to enter into an agreement to distribute

panetones and sell them only during their period prior to expiration. Nestle USA precluded Nestle Peru from distributing any future panetones to the Plaintiffs because the products are sold in the Latino Market throughout the year by altering the expiration dates and Nestle USA did not want its illegal conduct to be discovered.

As a direct and proximate result of Defendants' activities, Defendants and their co-conspirators did not permit products directly sold by Defendants and/or their co-conspirators to be sold to Plaintiffs, who had secured a contract to sell the panetones in the United States, which was initially approved by Nestle Peru. As alleged more fully below, Defendants and their co-conspirators fixed, raised, maintained or stabilized prices of panetones products directly sold in the United States and its territories beginning in 2016 and continuing until the present. They also conspired to sell products with expired labels and altered their expiration dates, deceiving the public and violating FDA regulations. As a result of Defendants' unlawful conduct, Plaintiffs have been injured in their businesses and property, including paying substantial amounts for products purchased from Defendants which they were forbidden from selling by Defendants and loss of contractual relations. Plaintiffs therefore seek damages.

**JURISDICTION**

1. This Court has subject matter jurisdiction of each of the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1337.

**VENUE**

2. Venue is proper in this Court pursuant to 15 U.S.C. §§ 15 and 22, 28 U.S.C. § 1391(b), and 28 U.S.C. § 1407, because:

3. a substantial part of the events giving rise to these claims occurred in this District, including the sale at artificially high prices and;

4. Defendants transact business or are found in this District, or in the case of the foreign Defendants, they transact business directly and/or through the activities of domestic subsidiaries and affiliates that each foreign Defendant dominates and controls within this District;

5. Defendants are subject to the personal jurisdiction of this Court because they: are amenable to service of process because each inhabits, transacts business in, has continuous or systematic contacts with, or is found or has sufficient minimum contacts in the United States sufficient to satisfy due process;

6. are amenable to service of process because each inhabits, transacts business in, or is found in this District, and Defendants headquartered outside this District are nevertheless engaged in the business of developing, manufacturing, distributing, advertising and/or selling panetones products throughout the United States, including in this District.

**PARTIES**

7. Plaintiff Latino Foods is a corporation registered in New Jersey, it operates in Fairview, New Jersey. Plaintiff distributes food products to retailers.

8. Plaintiff Peru Food, Inc. is a corporation registered in New Jersey, it operates in Fairview, New Jersey. Plaintiff distributes food to retailers.

9. Defendant Nestle, S.A., is a Swiss company with its principal place of business at Ave Nestlé 55, Caisse Postale 353, Vevey, Vaud CH-8100 Switzerland. Nestlé S.A. is the world's largest food and beverage company. Nestlé S.A. participates in numerous markets, including coffee, water, other beverages, ice cream, infant nutrition, health food, pet food, soups, seasonings, pasta sauces, frozen food, refrigerated products, chocolate candy products, and biscuits. During the Relevant Period, Nestlé S.A. manufactured, sold and/or distributed chocolate candy products, directly and/or through its predecessors, affiliated companies, and/or subsidiaries, to customers throughout the United States and North America

10. Defendant Nestle, USA, is a Delaware corporation with its principal place of business at 800 North Brand Boulevard, Glendale, California. Nestlé USA is a wholly-owned subsidiary of Nestlé S.A., employs between 15,500 and 17,000 employees, and had $8.5 billion in sales in 2006. Nestlé USA is grouped into various divisions, including chocolate and confectionary, coffee and beverages, food services, ice cream, nutrition, water, and pet care. During the Relevant Period, Nestlé USA manufactured, sold and/or distributed chocolate candy products,

directly and/or through its predecessors, affiliated companies, and/or subsidiaries, to customers throughout the United States and North America.

11. Defendant Nestle Peru, is a Delaware corporation with its principal place of business at 800 North Brand Boulevard, Glendale, California. Nestlé USA is a wholly-owned subsidiary of Nestlé S.A., employs between 15,500 and 17,000 employees, and had $8.5 billion in sales in 2006. Nestlé USA is grouped into various divisions, including chocolate and confectionary, coffee and beverages, food services, ice cream, nutrition, water, and pet care. During the Relevant Period, Nestlé USA manufactured, sold and/or distributed chocolate candy products, directly and/or through its predecessors, affiliated companies, and/or subsidiaries, to customers throughout the United States and North America.

## FACTUAL ALLEGATIONS

### Coconspirators

12. Various other persons, firms, corporations and entities not named as Defendants, including, but not limited to, Rol-Rom Foods, an independent, diversified retail and foodservice wholesale distributors based in Paterson, New Jersey, has participated as co-conspirator with Defendants in violation of the antitrust laws of the United States. Plaintiffs reserve the right to amend this pleading to name other Defendants. Each Defendant acted as the agent of or for other Defendants with respect to the acts, violations and common course of conduct alleged by Plaintiffs

**PRODUCT**

13. The term "panetones" as used herein, refers to panetones confectionary products packaged to be sold at retail.

14. The market for the production of D'Onofrio panetones products in the United States is concentrated, and during the Relevant Period that market was dominated by Defendants and their co-conspirator.

15. Because of their high collective market share in the United States and Peru, Defendants, when acting collectively, are able to exercise market power (including the ability to raise prices or reduce prices) in the United States market for the manufacture/sale of D'Onofrio panetones products (hereinafter the "Relevant Market") and more significant, have altered the dates of expiration on panetones sold to retailers and have sold them out of season at cheaper prices.

16. On August 18, 2016, Plaintiff Latino Food entered into a distribution agreement with Sagastegui Distribuidores, S.R.I. for the distribution of Nestle D'Onofrio panetones in the United States. The product is manufactured exclusively by Nestle, Peru.

17. The agreement between Sagastegui and Latino Food was approved by Nestle Peru.

18. Nestle Peru, the manufacturer of all Nestle panetones worldwide also sells panetones to Defendant Nestle USA. Nestle USA claims an exclusive right to distribute D'Onofrio panetones in the US because it is engaged in a conspiracy to dump all expired panetones Nestle, Peru cannot sell during the season. The conspiracy deals with having a sole distributor in the United States, Rol-Rom Foods,

alter the expiration dates on the panetones to sell them at discounted prices as determined by the co-conspirators after the X-mas season has ended.

19. Several containers of panetones were sent to Plaintiff, Latino Food between July 2016 and October 2016.  Plaintiff Peru Food paid for the invoices.

20. Immediately after Plaintiff Latino Food commenced its distribution of panetones, Rol-Rom sales people informed Defendant Nestle USA that Plaintiffs were engaged in the distribution of D'Onofrio panetones.  Immediately thereafter, Nestle USA's counsel contacted Plaintiffs and asked them to cease and desist the distribution of the products and threatened the Plaintiffs with costly legal action.

21. Plaintiffs' panetones were to be sold within their expiration time and during the Christmas holiday, which is when the Peruvian community consumes the panetones at its highest prices.  In order words, the panetones purchased by Plaintiffs were fresh and to be sold to retailers seasonally.

22. Plaintiffs incurred loss sales in the amount of $190,000.00 from September of 2016 to December 2016.

23. Plaintiffs later learned that Defendant Nestle USA purchases panetones with expired dates from Nestle Peru and alters their expiration date and distributes them in the United States market in violation of the law.

24. Plaintiffs' representatives went directly to stores selling the D'Onofrio panetones out of season and discovered that Rol-Rom sells panetones that are beyond the expiration date provided by the panetones sold by Nestle Peru to Nestle USA.

25. Plaintiffs' representatives purchased panetones on different establishments where Defendant Nestle's distributor and co-conspirator sells them and learned that dates of expirations had been altered.  **See Annexed Exhibit A to this Complaint.**

26. Defendant Nestle USA, precluded Plaintiffs from fulfilling their contrsct of distribution with Sarategui for distribution of D'Onofrio panetones.

27. Defendant Nestle Peru, refused to sell any more D'Onofrio panetones to Sarastegui to provide to Plaintiffs.

28. Upon information and belief, some of the executives involved in the approval of the sale of D'Onofrio panetones to Sarastegi for re-sale to Plaintiffs have been fored by Nestle Peru.

29. Defendant Nestle USA interfered and successfully canceled a 3-year distribution agreement between Sarastegui and Plaintiff Latino Food.

30. During the Relevant Period of September 2016 to the present, Defendants and their co-conspirator engaged in business that affects or is within the flow of interstate commerce, and the effect of that business on interstate commerce is substantial. In particular:

(a) Defendants and their co-conspirator sold and shipped substantial quantities of panetones from Nestle Peru to Nestle USA in a continuous and uninterrupted flow in interstate commerce to customers located in States in which the Defendants sold panetones;

(b) money flowed between banks outside of the State in which each Defendant and co-conspirators are located, incorporated, or has its principal place of business and other

States. The effect of Defendants' and/or their co-conspirators anticompetitive conduct on United States commerce gives rise to Plaintiffs' claims.

**VIOLATIONS ALLEGED**

**COUNT I**

**Conspiracy to fix prices (15 U.S.C. § 1)**

31. Plaintiffs incorporate by reference the allegations above, as if fully set forth herein.

32. Beginning at least as early as September 2016, and continuing until in or about the present , with an effect that continues, Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy not to compete on price in the sale of chocolate candy products in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

33. The contract, combination and conspiracy among Defendants and their co-conspirators consisted of a continuing course, pattern and practice of conduct regarding the production, pricing and sale of chocolate candy products, the substantial terms and purpose of which were:

(a) To fix, stabilize, maintain and/or raise prices of panetones in the United States and elsewhere;

(b) To allocate the volume of sales and/or market shares of panetones in the United States;

(c) To allocate contracts to supply panetones in the United States and elsewhere; and/or

(d) To control the supply of panetones by altering its expiration dates in the United States.

29. In order to formulate and effect the foregoing illegal combination and conspiracy, Defendants and their co-conspirators engaged in one or more of the following overt acts:

(a) They agreed to exchange and did exchange current and future price information and disrepute the labels to erase expiration dates of panetones sold in the United States and elsewhere;

(d) They agreed to modify the practice of providing discounts, rebates and allowances to customers in connection with the sale of panetones but only for those where the labels had expired;

(f) They agreed to allocate and allocated market shares of panetones sales in the United States and elsewhere;

30. Defendants and their co-conspirators entered into and refined their illegal combination and conspiracy through, among other things, the overt acts described above, including without limitation, participating in conversations and meetings in the United States, Canada and/or elsewhere to discuss the prices of panetones to be sold and/or the volume of panetones to be produced in the United States and elsewhere; participating in conversations and attending meetings in the United States, Peru and/or elsewhere concerning implementation of and adherence to their conspiracy; issuing price reductions for adulterated panetones in the United States in accordance with the conspiracy.

31.  As a result of Defendants' and their co-conspirators' conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and during times relevant to these allegations:

(a) Price competition in the sale of panetones among Defendants and their co-conspirators to Plaintiffs and others has been restrained, suppressed and eliminated;

(b) Prices for chocolate candy products sold by Defendants and their co-conspirators have been raised, fixed, maintained and/or stabilized at artificially high and noncompetitive levels throughout the United States and elsewhere; and

(c) Plaintiffs and other direct purchasers of chocolate candy products from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

32.  Plaintiffs have been injured in their business or property by reason of Defendants' and their co-conspirators' antitrust violations in amounts not yet ascertained. Plaintiffs' injuries as direct purchasers of chocolate candy products are injuries of the type that the antitrust laws were designed to prevent and flow from that which makes Defendants' and their co-conspirators' acts unlawful.

33. Plaintiffs are threatened by continuing loss and damage as a result of Defendants' and their co-conspirators' unlawful conduct. Plaintiffs therefore are entitled to injunctive relief.

**COUNT II**

**Intentional Interference With Plaintiff's Latino Food's Contractual Relations**

34. Plaintiffs incorporate and restate paragraphs 1 through 34, as if more fully set forth herein.

35. At all relevant times during the fall of 2016 when the Plaintiff Latino Foods was negotiating his purchase of panetones with Sarastegui and Nestle Peru, it had a reasonable expectation of economic benefit or advantage from the purchase and distribution of panetones. At all times relevant, the Defendants knew of Plaintiff Latino Food's expectancy of economic benefit and advantage.

36. Defendants, wrongfully and intentionally interfered with Plaintiff's expectancy of economic benefit and advantage.

37. Defendants engaged in misconduct that is intentional and has been designed to preclude Plaintiff from exercising his contractual rights.

38. Starting on or about October of 2016, Defendant Nestle USA also intentionally, knowingly, and maliciously caused Defendant Nestle Peru to breach its contractual obligations to the Plaintiff Latino Food by failing to provide the products it agreed to provide to Sarastegui for distribution to Plaintiff.

39. Defendants' intentional and malicious conduct, to interfere with Plaintiff Latino Food's contractual rights by stopping distribution in order to effectuate their conspiracy to sell panetones after expiration has caused the Plaintiff monetary damages in an amount of at least $750,000.00.

**WHEREFORE**, Plaintiffs, Latino Food, Inc. and Peru Food, Inc., pray:

a) Declaring that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, were in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

b) Entering a permanent injunction prohibiting Defendants from future violations of the antitrust laws and from practices that facilitate those violations;

c) for an award of appropriate compensatory damages;

d) for an award of punitive damages to deter further conduct of this kind by Defendants;

e) for a trial by jury of all issues so triable, for his attorney's fees and costs herein expended as provided for by applicable federal statutes;

f) and for any and all other just and proper relief.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, each Plaintiff demands a jury trial of all issues triable by jury.

Dated: October 26, 2017              /s/ Gilberto Garcia

_____
GILBERTO GARCIA
ATTORNEY FOR PLAINTIFF
25 EAST SPRING VALLEY AVENUE
MAYWOOD, NEW JERSEY 07607
TEL: 201-3287042
Gilberto13@me.com
ID:040311987
GG9733